**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 CR 324-22 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| KENNETH STARKS, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Defendant Kenneth Starks seeks a sentence reduction pursuant to the First Step Act of 2018. Because his sentence was previously reduced pursuant to Guideline amendments promulgated to implement the provisions of the Fair Sentencing Act of 2010, however, the Court concludes that a further reduction of his sentence is neither authorized by the First Step Act nor warranted by its rationale, particularly given the agreed sentence that Mr. Starks bargained for and received. Accordingly, his motion is denied.

## I. BACKGROUND

On June 28, 2007, Starks pled guilty to conspiring to possess with intent to distribute and to distribute controlled substances, namely, 50 grams or more of crack cocaine, 5 kilos or more of cocaine, and 1 kilo or more of heroin, in violation of 21 U.S.C. § 846. ECF Nos. 799, 800 ¶ 5.[1] In his plea agreement, Starks acknowledged that he was accountable for more than 1.5 kilograms of crack cocaine and approximately 1 kilogram of cocaine, 271 grams of heroin, and 500 grams of marijuana. ECF No. 800 ¶ 10.b.

[1] Docket citations refer to the docket in this case (06 CR 324) unless otherwise indicated.

Mr. Starks was sentenced on December 16, 2010. ECF No. 1789. Based on the amounts of controlled substances for which he had admitted responsibility (a marijuana equivalency of 30,471 kilograms based on the Guidelines drug equivalency table then in effect), Starks' base offense level was 38. See ECF No. 1959. The base offense level was increased by three levels for Starks' role in the offense and two levels for possession of a firearm during the course of the conspiracy; it was reduced by three levels based on acceptance of responsibility. The final offense level was therefore 40 (38+3+2-3). *Id.* Starks was in criminal history category VI, and the applicable guideline range was 360 months to life. The plea agreement included a provision pursuant to Fed. R. Crim. P. 11(c)(1)(C) that required the Court (if it accepted the plea agreement) to impose a sentence of imprisonment that was 66 percent of the low end of the applicable Guidelines range if the government moved for a departure based on substantial cooperation. ECF No. 800 ¶ 13. The government made that motion and Judge Der-Yeghiayan, to whom this case was originally assigned, accepted the plea agreement and imposed the required sentence of 237 months (360 x .66). ECF No. 1789.

Before Mr. Starks was sentenced, Congress enacted the Fair Sentencing Act of 2010 ("FSA") to "restore fairness to Federal cocaine sentencing" and to reduce disparities among defendants convicted of crimes involving cocaine base and powder cocaine. Pub. L. No. 111-220, 124 Stat, 2372 (Aug. 3, 2010). The Act amended 21 U.S.C. § 841 by reducing the 100-1 cocaine-crack ratio reflected in the drug equivalency tables to an 18-1 ratio, effectively increasing the amount of cocaine base required to trigger mandatory minimum sentences. Before enactment of the FSA, violations involving 50 grams or more of a mixture or substance containing cocaine base resulted in a mandatory minimum sentence of 10 years (or 20 years if the offense took place following another felony drug conviction). After enactment of the FSA, however, 280 grams or

more of a mixture or substance containing cocaine base was required to trigger the minimum sentence. The threshold quantity triggering the mandatory minimum sentence of 5 years (or 10 following another felony drug conviction) also increased, from 5 grams to 28 grams.

Although the FSA was enacted before Mr. Starks was sentenced, there is no dispute that it played no role in Mr. Starks' initial sentencing.[2] The FSA, however, also provided the Sentencing Commission with emergency authority to make "conforming amendments . . . necessary to achieve consistency with other guideline provisions and applicable law." FSA § 8. To conform the guidelines to the new mandatory minimums established by the FSA, the Sentencing Commission adopted Amendment 750,[3] which revised the drug quantity tables listed in § 2D1.1(c) to make proportional changes in crack cocaine offense levels consistent with the higher quantities required to trigger the mandatory minimum sentences. See U.S.S.G. app. C, amend. 750 (2011).[4] The retroactive revision of the offense levels applicable to crack cocaine offenses made it possible for defendants like Mr. Starks, who had been sentenced based on guideline ranges tied to the lower

---

[2] When Mr. Starks was sentenced, the Seventh Circuit had already held that the FSA was not retroactive. *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Ultimately, the Supreme Court held that the FSA applied retroactively to offenders who had not been sentenced when the FSA became effective. *Dorsey v. United States*, 567 U.S. 260 (2012); *United States v. Robinson*, 697 F.3d 443, 444 (7th Cir. 2012). As his counsel notes, however, Mr. Starks did not appeal his conviction or sentence and so his conviction became final before *Dorsey* was decided. In addition, the quantity of crack cocaine for which Starks admitted responsibility (1.5 kilos) made the mandatory minimums inapplicable in any event.

[3] The Sentencing Commission first promulgated temporary emergency amendments to the drug quantity tables in Amendment 748, which were not retroactive. Those amendments were made permanent by Amendment 750, effective November 1, 2011. Amendment 750, in turn, was made retroactive by Amendment 759. *See* U.S.S.G. app. C, amend. 759 (2011).

[4] As explained in Amendment 750, to account for the FSA's changes to the amounts required to trigger application of mandatory minimum sentences, "the amendment conforms the guideline penalty structure for crack cocaine offenses to the approach followed for other drugs, i.e., the base offense levels for crack cocaine are set in the Drug Quantity Table so that the statutory minimum penalties correspond to levels 26 and 32 . . . . [O]ther offense levels are established by extrapolating proportionally upward and downward on the Drug Quantity Table."

triggering quantities for mandatory minimum sentences, to obtain sentence reductions where the new crack offense level quantities provided a lower guideline range (provided that the lower range was not constrained by the applicable mandatory minimum sentence in effect when they were sentenced (because, again, the FSA itself was not retroactive). *See Robinson*, 697 F.3d at 444.

And, indeed, shortly after Amendment 750 was adopted, Mr. Starks sought and obtained a sentence reduction based on the lower crack offense levels promulgated by the Sentencing Commission to implement the FSA.[5] Judge Der-Yeghiayan agreed that Starks qualified for a sentence reduction pursuant to Amendment 750 and granted Starks' motion. The amendment reduced Starks' base offense level by four levels, thereby reducing his guideline range to 324 – 405 months. Consistent with the parties' plea agreement provision requiring the imposition of a sentence of 66 percent of the low end of the applicable guidelines range, Judge Der-Yeghiayan reduced Mr. Starks's sentence from 237 months to 213 months (324 x .66). ECF No. 1959.

Mr. Starks subsequently received another sentence reduction in 2016 following Amendment 782 to the Guidelines, which "reduced by 2 levels the base offense levels assigned to drug quantities in § 2D1.1." *United States v. Taylor*, 778 F.3d 667, 672 (7th Cir. 2015). Application of Amendment 782 reduced Starks' base offense level from 34 to 32, reduced the final offense level from 36 to 34, and reduced his Guidelines range to 262 – 327 months of imprisonment. Joint Submission, ECF No. 2296. Judge Der-Yeghiayan again reduced Starks' sentence to 66 percent of the low end of the newly applicable range, 172 months (262 x .66). ECF No. 2299. That is where his sentence presently stands.[6]

---

[5] Mr. Starks submitted a letter to the Court seeking the appointment of counsel to assist in the preparation of a motion based on the 2011 Guidelines amendment, ECF No. 1958, which the Court treated as a motion for sentence reduction, ECF No. 1959.

[6] According to the Bureau of Prison's inmate locator, Mr. Starks' projected release date is April 24, 2022.

Mr. Starks now seeks a further sentence reduction based on the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (effective Dec. 21, 2018) ("First Step Act"). For the reasons set forth below, the Court concludes that Mr. Starks is not eligible for a sentence reduction under Section 404 and, even if he were, the Court would exercise its discretion to deny the motion.

## II. Analysis

As relevant here, Section 404 of the First Step Act allows courts to reduce a defendant's sentence for a "covered offense" by applying the FSA retroactively.[7] A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 … that was committed before August 3, 2010." First Step Act § 404(a). The Seventh Circuit has held that "whether an offense is 'covered' under the First Step Act "simply depends on the statute under which a defendant was convicted"—not on whether the offense involved a drug quantity that was lower than the revised quantity thresholds

---

[7] Section 404 of the First Step Act states in its entirety:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194

set by the FSA. *United States v. Shaw*, 957 F.3d 734, 738-39 (7th Cir. 2020). For a "covered offense," a court may impose a reduced sentence "as if sections 2 and 3 of the [FSA] were in effect at the time the covered offense was committed," FSA § 404(b), even if the crime involved drug quantities that still qualified for application of the mandatory minimum sentences for crack cocaine.

Having been convicted of an offense—conspiring to traffic in cocaine base—for which the FSA modified the statutory penalties, Mr. Starks maintains that he is eligible for a sentence reduction under the First Step Act. Although the Government disagrees with the Seventh Circuit's reasoning in *Shaw*, it nevertheless acknowledges that *Shaw* dictates acceptance of Starks' argument on the scope of "covered offense." In the absence of a dispute about whether Starks' conviction qualifies as a covered offense, the parties devote most of their briefs to debating whether the Court should exercise the discretion afforded by the First Step Act to reduce Mr. Starks' sentence.

**A. Fed. R. Crim. P. 11(c)(1)(C)**

Although Mr. Starks was convicted of an offense covered under the First Step Act, there are several potential arguments that could be made that would challenge Mr. Starks' eligibility for a sentence reduction based on the FSA amendments. For one, Mr. Starks entered into a plea agreement with an agreed sentence, which required the Court's acceptance. That agreement required the Court to impose a custodial sentence of 66 percent of the low end of the applicable Guidelines range. The First Step Act has not changed the applicable Guidelines range; it remains 262 – 327 months and Mr. Starks' sentence of 172 months is the sentence the Court was required to impose based on the plea agreement Starks entered into with the government. That plea agreement remains binding on the parties and on this Court. See Fed. R. Crim. P. 11(c)(1)(C)

(parties agreement to a specific sentence or range "binds the court once the court accepts the plea agreement").

Mr. Starks argues that the Supreme Court's holding in *Hughes v. United States*, 138 S. Ct. 1765 (2018) permits the Court to reduce his sentence below the agreed sentence. In *Hughes*, the Supreme Court held that a defendant who received an agreed sentence under Rule 11(c)(1)(C) is eligible for a sentence reduction pursuant to § 3582(c)(2) when the Guidelines range was part of the framework relied on by the sentencing court in determining whether to accept the agreed sentence, Here, there is no question that Starks' agreed sentence was "based on" the Guidelines—the agreed sentence is expressly defined by reference to the Guideline range—and, consistent with *Hughes*, Mr. Starks' sentence has twice been reduced as the result of Guideline amendments (specifically, Amendments 750 and 782) that lowered the applicable Guideline range. But what Mr. Starks seeks here is not a sentence reduction "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," § 3582(c)(2). Now, Mr. Starks is seeking a sentence reduction based on a statutory amendment that had no effect at all on his Guidelines range. The rationale of *Hughes*—an agreed sentence based on a guideline range should be fair game for modification where the guideline range has subsequently been lowered—is seemingly inapposite in a case, like this one, where the defendant seeks to reduce an agreed guideline sentence on the basis of a statute that did not change the applicable guideline range.

As Mr. Starks notes, however, there are a number of cases that accept the proposition that *Hughes* also permits courts to lower sentences imposed pursuant to Rule 11(c)(1)(C) (though most do so without considering the distinction between § 3582(c)(2) reductions and Section 404 reductions). Resolving the issue is not necessary, however, because (as Mr. Starks concedes) *Hughes* expressly permits the court to consider "the benefits the defendant gained by entering a

Type–C agreement when it decides whether a reduction is appropriate (or when it determines the extent of any reduction), for the statute permits but does not require the court to reduce a sentence." *Hughes*, 138 S. Ct. at 1777. Here, Mr. Starks reaped substantial benefits—principally certainty and reduction of risk—from his binding plea agreement that, in the Court's view, significantly outweigh the inability to seek another sentence reduction premised on changes to the statutory minimum sentences applicable to crack cocaine offenses that had absolutely no effect on the calculation of his Guidelines range.

**B. Section 404 of the First Step Act**

The Court also concludes that Section 404(c) of the First Step Act precludes further sentencing relief on the basis of changes made to the sentencing rules applicable to crack cocaine offenses. Section 404(c) provides that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the [FSA]." As noted above, the FSA played no role in Mr. Starks' original sentencing, but his sentence was reduced in 2011 pursuant to Amendment 750, which was promulgated by the Sentencing Commission to implement the FSA's amendments to the mandatory minimum sentences applicable to crack cocaine offenses. If that reduction constitutes a sentence "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3" of the FSA, then this Court cannot entertain Mr. Starks' motion for a further reduction under the First Step Act.

Mr. Starks concedes that he has received the benefit of the guidelines amendments to the crack cocaine quantities by means of his prior sentence reduction motions. He asserts, however, that those guidelines-based motions do not render him ineligible for a sentence reduction under the First Step Act because the FSA made statutory, rather than Guideline, amendments. Whatever

benefit he may have received as a result of Amendment 750 to the Guidelines, Mr. Starks maintains, is irrelevant to his eligibility for a further sentence reduction pursuant to Section 404 of the First Step Act.

Although ably presented by Mr. Starks' counsel, the Court is not persuaded by Mr. Starks' argument. The text of Section 404 bars motions by those who have obtained prior sentence reductions "***in accordance with*** the amendments made by sections 2 and 3 of the Fair Sentencing Act." (emphasis added). As an initial matter, this plainly does not mean that § 404(c) bars only motions made by defendants who previously had sentences reduced ***by*** the FSA. For starters, there are no such defendants. Prior to enactment of the First Step Act, no defendant had ever obtained a reduced sentence by directly invoking sections 2 or 3 of the FSA. That is because the FSA itself did not authorize any sentencing reductions. *United States v. Bailey*, 777 F.3d 904, 907 (7th Cir. 2015) ("the FSA itself does not provide an independent basis for a sentence reduction") (internal quotation marks omitted). Standing alone, the FSA changed only the mandatory minimum sentences applicable to crack cocaine offenses on a prospective basis; *Dorsey* supplied the only element of retroactivity.[8] If § 404(c) is read to refer only to sentencing reductions authorized by the FSA itself, it is a nullity and, of course, reading substantive provisions in a manner that renders them inoperative is not a favored interpretive canon. "A statute should be construed so that effect

[8] Mr. Starks argues that defendants who were sentenced after 2010 but before *Dorsey* and who "were remanded for resentencing" after *Dorsey* and received lower sentences show that there are some defendants whose sentences were reduced by the FSA. But that simply ignores the fact that the sentences in question were vacated not because the FSA authorized the resentencing but because the sentences were held on direct appeal to be unlawful because they had not applied the FSA, which *Dorsey* held, was applicable to them. What we are addressing in Mr. Starks' case, however, is a defendant whose sentence was already final when *Dorsey* was decided; the FSA itself (as distinguished from the Guidelines amendments required to implement the statutory changes) did not provide a means for resentencing those, like Mr. Starks, whose sentences were already final when *Dorsey* was decided.

is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).

The text of Section 404(c), moreover, does not support Mr. Starks' argument. The statutory language, which employs the phrase "in accordance with," rather than "by," is necessarily broader.[9] To be "in accordance" does not require precise equivalency, but only agreement, conformity, or consistency. *See* RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. 1987) (defining "accordance" as "agreement; conformity" and "consistent" as "accordant"). In barring further sentencing relief for defendants who have previously obtained a sentencing reduction "in accordance with" the FSA, the First Step Act therefore necessarily extends beyond defendants whose sentences were reduced by the FSA statutory amendments (again, there are no such defendants) to those who obtained reductions pursuant to Guidelines amendments consistent with the statutory changes. That includes defendants who obtained reductions authorized by Amendment 750 to the Guidelines. Indeed, in *Bailey* the Seventh Circuit held that a sentence that has been based on the drug quantity changes made by Amendment 750 has "already accounted for the FSA." *Bailey*, 777 F.3d at 906. Simply put, a sentence reduced by means of the "conforming amendments" to the guidelines—the changes implemented by Amendment 750—is a sentence reduced "in accordance with" the FSA. *Accord United States v. Span*, 437 F. Supp. 3d 659, 666 (N.D. Ill. 2020) ("Courts addressing this issue appear uniformly to have held that defendants whose sentences were reduced pursuant to Amendment 750 have been resentenced 'in accordance with

[9] Mr. Starks reads the statute to say: "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced ***by*** the amendments" to sections 2 and 3 of the FSA. But as written, the statute encompasses more, extending not just to sentences reduced ***by*** the FSA (of which there are none), but also sentences reduced "***in accordance with***" the statute—that is, pursuant to the conforming amendments the statute expressly required the Sentencing Commission to promulgate.

the amendments made by sections 2 and 3" of the FSA) (Lefkow, J.); *United States v. Martin*, 2019 WL 3268835, *2 (N.D.W.V. July 19, 2019) (same); *United States v. Garrett*, 2019 WL 1377021, *2 (S.D. Ill. Mar. 27, 2019) (same).[10]

As the Seventh Circuit has explained, Amendment 750 was adopted "to implement" the FSA amendments to mandatory minimum sentences applicable to crack cocaine offenses. *United States v. Taylor*, 778 F.3d 667, 669 (7th Cir. 2015). *See also, e.g., United States v. Blake*, ---F.3d---, 2021 WL 248880 *1 (Jan. 26, 2021) (the FSA effected "changes … to the rules (both statues and Sentencing Guidelines) for sentencing persons convicted of crack-cocaine offenses"); *United States v. Coleman*, 830 Fed. App'x 769, 770 (2020) (2012 Guidelines "incorporated" the provisions of the FSA); *United States v. Currie*, 571 Fed. App'x 492, 494 (7th Cir. 2014) (FSA "called for" guideline amendments to reduce crack cocaine offense levels). Indeed, the FSA itself directed the Sentencing Commission to adopt "conforming amendments . . . necessary to achieve consistency with other guideline provisions and applicable law." FSA § 8.[11] The Supreme Court has also explained that "[r]ead most naturally, 'applicable law' refers to the law as changed by the Fair Sentencing Act, including the provision reducing the crack mandatory minimums. . . . [A]chieving consistency with 'other guideline provisions' means reducing the base offense levels for all crack amounts proportionally . . . ." *Dorsey*, 567 U.S. at 276. In short, the sentencing changes

---

[10] *See also United States v. Holmes*, 2019 WL 3859577, *9 (D.D.C. Aug. 17, 2019) (Howell, C.J.) (defendant was sentenced "in accordance with the amendments made by" the FSA where sentenced according to 2011 Guidelines manual and First Step motion therefore barred by § 404(c)). After a joint motion by the parties on appeal to remand the issue to the district court, this question is presently the subject of further briefing and consideration in that court.

[11] Mr. Starks argues that because the directive to implement conforming amendments is set forth in Section 8 of the FSA, rather than in Section 2 or 3, that the amendments are outside the scope of Section 404. But the required amendments must be in accordance with the statutory amendments in Sections 2 and 3 and so cannot be meaningfully distinguished on that basis. Again, Section 404(c) limits eligibility for relief by those who have previously received a sentence reduction "in accordance with" Section 2 or 3, not "by" Section 2 or 3.

wrought by the FSA included not only the change in the quantities needed to trigger application of the mandatory minimum sentences but also the Guideline amendments necessary to implement those statutory changes. And to assess whether one has obtained relief "in accordance with" the FSA, then, one must consider whether a defendant has previously obtained sentencing relief by invoking the conforming amendments of the guidelines required by the FSA.

Mr. Starks has. As discussed above, Mr. Starks moved pursuant to 18 U.S.C. § 3582(c)(2) for a sentence reduction based on the reduced offense levels promulgated by Amendment 750.[12] Applying the methodology set forth in Guideline § 1B1.10, Judge Der-Yeghiayan calculated Starks' sentencing range using the lower crack cocaine offense level promulgated by Amendment 750 and reduced his sentence to 66 percent of the low end of that new range. That was a sentencing reduction "in accordance with" the changes the FSA made to the crack cocaine quantities triggering mandatory minimum sentences.

A contrary reading, moreover, would result in an anomaly that is at odds with the intent of Section 404. The evident purpose of the First Step Act in making the FSA retroactive is to put pre-FSA defendants on more equal footing with defendants who were sentenced after the FSA was applicable. But permitting sentence reduction motions under the First Step Act by defendants who have already obtained the benefit of sentence reductions based on the amendments implementing the FSA's provisions would put defendants who were sentenced before the FSA in a ***better*** position than those who were not, giving them an opportunity for an additional sentence reduction that is not available to those sentenced after the FSA was enacted. The Court can imagine no reason that Congress would choose to favor the former over the latter; adopting that interpretation would

[12] Amendment 782, by contrast, was not adopted pursuant to the statutory directive of the FSA and therefore a sentence reduction based on that amendment does not bar relief under Section 404 of the First Step Act.

exacerbate, rather than reduce, the sentencing disparities arising from differences in the statutory and Guideline provisions applicable to offenses involving cocaine base and cocaine at various times.

Concluding that Mr. Starks' argument is inconsistent with both the statutory text and the statute's evident purpose, the Court concludes that Mr. Starks' prior sentence reduction pursuant to Amendment 750 precludes further relief pursuant to Section 404 of the First Step Act.

**C. Discretionary Considerations**

Even if the First Step Act afforded the Court the discretion to reduce Mr. Starks' sentence, the Court would decline to do so. The Seventh Circuit has recently held that in the context of exercising discretion afforded by the First Step Act, it is procedural error not to consider "the lower statutory penalties now applicable" for crack cocaine offenses. *United States v. Corner*, 967 F.3d 662, 666 (7th Cir. 2020). Here, however, the statutory penalties have no direct effect on the sentence that could be imposed on Mr. Starks because he pled guilty and acknowledged that his offense involved a quantity of crack cocaine—"more than 1.5 kilograms"—that was far in excess of the amount—280 grams—necessary to make the highest mandatory minimum sentence of 10 years applicable.

As discussed above, the only effect that the FSA's modified minimum sentences could have on Mr. Starks' sentence is by means of the amended Guidelines promulgated to implement those statutory mandatory sentences. To incorporate the new mandatory minimums into the drug quantity table, the Sentencing Commission had to revise the offense levels for crack cocaine offenses proportionately. And, as also discussed above, Mr. Starks' sentence has already been reduced—by two years—as a result of those Guidelines changes. Moreover, offense levels for drug offenses were reduced across the board by means of Amendment 782, and Mr. Starks'

sentence was further reduced as a result of that amendment (which was independent of the FSA). The bottom line is that Mr. Starks was sentenced in 2010 on an offense level of 40; his offense level was reduced by four levels as a result of the FSA amendments to the Guideline; and his offense level was further reduced to 34 based on the two level across-the-board reduction in drug offense levels provided by Amendment 782. Coupled with Mr. Starks' criminal history category of VI, the low end of the Guidelines ranges for these offense levels was 360, 324, and 262 months, respectively; Starks' sentence was further reduced to 66 percent of these terms due to the parties' agreed sentence: 232, 213, and 172 months respectively. Mr. Starks' Guidelines range if sentenced today would produce an offense level of 262, and a sentence of 172 months by virtue of the agreed reduction for substantial assistance. Mr. Starks has received the full benefit of the changes wrought by the FSA amendments to the crack cocaine mandatory minimums and, in the Court's view, given the substantial quantity of drugs in which Mr. Starks trafficked (which included heroin, cocaine, and marijuana, in addition to crack) no further reduction in Mr. Starks' sentence is warranted.

Mr. Starks, moreover, has received the benefit of the bargain he struck with the government in his plea agreement. Again, as noted above, Mr. Starks reached an agreement with the government, accepted by the Court, that his sentence would be 66 percent of the low end of the applicable Guidelines range. That is precisely the sentence he has received. In agreeing to that sentence, Starks reduced his sentencing exposure dramatically; in exchange, he waived any right to argue that his sentence should be lower than 66 percent of the low end of the applicable Guideline range if the plea agreement was accepted by the Court. It was, and the Court sees no reason that Starks should no longer be held to that agreement, particularly after having reaped its benefits.

Reducing Mr. Starks' sentence below that to which he agreed in his plea agreement would not only contravene that agreement, it would also undermine several key sentencing objectives set forth in 18 U.S.C. § 3553(a). Beyond the fact that it would be anomalous to treat the FSA as providing defendants who were sentenced before the FSA was available to them but who obtained the benefits of the FSA amendments to the Guidelines a greater opportunity to have their sentences reduced than defendants who were originally sentenced after the FSA took effect, but it would inevitably exacerbate sentencing disparities between similarly situated defendants. As the government argues, Mr. Starks "should not receive a windfall unavailable to other defendants prosecuted for the same conduct after the enactment of the Fair Sentencing Act. Resp., ECF No. 2559, at 4. Providing such a windfall would increase sentencing disparities and thereby reduce, rather than promote, respect for the law, contravening two of the key sentencing objectives that Congress requires courts to consider.

In arguing that the Court should exercise discretion to lower his sentence, Mr. Starks primarily points to his positive record while serving his custodial term. The Court acknowledges the record but does not accord it substantial countervailing weight in the § 3553(a) analysis. That is both because compliance with rules and regulations in prison is required and expected and because the argument that the sentence imposed has achieved the desired effect is not a compelling argument for reducing the sentence imposed. In view of Mr. Starks' extensive criminal history, the risk of recidivism he poses cannot simply be dismissed with the observation that he is performing well in a highly controlled and regulated environment. His track record before this case, and his serious criminal conduct in this case, warrant the sentence Mr. Starks is currently serving.

Finally, Mr. Starks cites the COVID-19 pandemic as a reason the Court should entertain his motion. It remains open to Mr. Starks, as any other prisoner, to seek a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) if there are extraordinary and compelling reasons that warrant his release. Before doing so, however, he must satisfy the statute's exhaustion requirement. *United States v. Sanford*, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021) (statute's exhaustion requirement is a mandatory claim-processing rule that is a prerequisite to filing a motion for a sentence reduction pursuant to § 3582(c)(1)(A)).

## III. Conclusion

In the Court's view, Mr. Starks has received his due in this case: a significant sentence that reflects both the seriousness of his criminal conduct and his extensive criminal record; a major reduction in that sentence based on the substantial assistance he provided to the government; and a further sentence reduction in accordance with the changes to the rules governing sentences for crack cocaine offenses. Accordingly, Mr. Starks motion for further sentencing relief pursuant to Section 404 of the First Step Act is denied.

/s/ John J. Tharp, Jr.____
John J. Tharp, Jr.
United States District Judge

Dated: February 10, 2021